# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALVOID LINDSEY | § § § | |
| v. | § | CASE NO. 3:16-CV-3485-S |
| UNITED PARCEL SERVICE, INC. | § § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant United Parcel Service, Inc.'s ("Defendant" or "UPS") Motion for Summary Judgment [ECF No. 21]. For the reasons set forth below, the Court grants the Motion.

## I. BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Judge Jane J. Boyle to the docket of this Court on March 8, 2018.

Plaintiff Alvoid Lindsey ("Plaintiff") brings this lawsuit alleging age discrimination in connection with the termination of his employment with UPS. Plaintiff worked for Defendant from September 1985 until his termination on March 25, 2014. Compl. ¶¶ 6, 11. Plaintiff was promoted twice while working for Defendant. Def.'s Revised Br. ("Rev. Br.") 4. At the time of his termination, Plaintiff held the position of Day Sort Supervisor. *Id.* In this position, he supervised approximately seventy employees. Compl. ¶ 7; Pl.'s App. 2.

Defendant utilizes Employee Engagement Surveys ("Surveys") to give employees an opportunity to provide anonymous feedback to the company. Rev. Br. 5. In early March 2014, the Day Sort Supervisors received a list of Day Sort employees that needed to complete the Survey. *Id.* On or about March 4, 2014, Day Sort Manager Layne Blinco learned that none of the

designated employees had completed a Survey. *Id.* at 6. Blinco instructed the supervisors to have five employees per day complete a Survey so that all Surveys could be completed by the deadline. *Id.*; *see also* Compl. ¶ 7. Plaintiff "heard Donise Wilkey . . . speak up stating that she can have Tunisia Banks . . . do [the Surveys] while she is in the scanning room." Pl.'s App. 2. Plaintiff "sought assistance from [Banks] to complete the [S]urveys." Compl. ¶ 8; *see also* Rev. Br. 6. Wilkey also instructed Banks to complete Surveys for her employees. Rev. Br. 6; Pl.'s App. 17. Banks completed the Surveys for Plaintiff's and Wilkey's employees as instructed but reported her concerns with Plaintiff's instructions to Pat Griggs, a full-time supervisor. Rev. Br. 6.

On or about March 6, 2014, Blinco instructed Plaintiff and Wilkey to meet with him. Compl. ¶ 9. "Blinco claimed that [Plaintiff] and Wilkey were not following the proper procedure on completing the [S]urveys." *Id.* On or about March 17, 2014, Lindsey was instructed to meet with Ricky Joiner, Area Human Resources Manager, and Melissa Heinen, Security Manager. *Id.* ¶ 10; *see also* Rev. Br. 7. Hub Division Manager Jon Korn had directed Joiner and Heinen to investigate the incident. Rev. Br. 7. On or about March 25, 2014, Korn, Joiner, and Jeff Stucker, Day Sort Manager, met with Plaintiff, and Korn advised Plaintiff that he was being terminated.[1] *Id.* at 7-8; *see also* Compl. ¶ 11. Wilkey was terminated the same day. Rev. Br. 8. The stated reason for the termination was "violation of policy by allowing a part time supervisor to help complete some of the [Surveys]." Compl. ¶ 12.

Defendant has an Employee Dispute Resolution ("EDR") program that non-union employees can use to challenge employment decisions. Rev. Br. 8. Plaintiff requested that an EDR Peer Review Panel review his termination. *Id.*; Pl.'s App. 2. Plaintiff selected two coworkers

---

[1] Plaintiff claims that he was terminated by Korn and Joiner, but Plaintiff has not offered any evidence supporting this contention. By contrast, Defendant submitted a declaration stating that Korn alone made the decision to terminate Plaintiff, after consulting with the Director of Human Resources and the Director of Security. Def.'s Rev. App. 7.

2

to sit on the panel with Defendant's designated representative. Rev. Br. 8. Plaintiff submitted a position statement and appeared in person to testify. *Id.* The panel upheld his termination. *Id.*; Pl.'s App. 3.

Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission. Compl. ¶ 5. Plaintiff received a right-to-sue letter on September 29, 2016. *Id.* On December 22, 2016, Plaintiff filed the instant lawsuit, alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*[2] On February 14, 2018, Defendant advised the Court that, on January 29, 2018, District Judge Sam A. Lindsay had issued an opinion granting UPS's motion for summary judgment in Wilkey's age discrimination case against UPS. *See* ECF No. 37 (citing *Wilkey v. United Parcel Serv., Inc.*, Civ. A. No. 3:16-CV-3486-L, 2018 WL 588245 (N.D. Tex. Jan. 29, 2018)). On March 13, 2018, after the case was transferred to the docket of this Court, the Court held a Status Conference. *See* ECF Nos. 39, 40. At the Status Conference, the parties informed the Court that Wilkey had appealed Judge Lindsay's decision. On March 30, the Court administratively closed this case pending the Fifth Circuit's decision in *Wilkey*. *See* ECF No. 41.

On October 15, 2018, Defendant notified the Court that the Fifth Circuit "issued a per curiam opinion affirming summary judgment for UPS 'essentially for the reasons comprehensively elucidated by the district court,' and entered Judgment for UPS." ECF No. 42 (citing *Wilkey v. United Parcel Serv., Inc.*, 740 F. App'x 51, 52 (5th Cir. 2018) (per curiam)). On October 16, the Court (1) administratively reopened the case; (2) ordered counsel for both parties to confer

---

[2] Plaintiff also alleges that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's *race, color, religion, sex, or national origin.*" 42 U.S.C. § 2000e-2(a)(1) (emphasis added). As Plaintiff is only alleging age-based discrimination, he cannot bring a claim under Title VII.

3

regarding the impact of the Fifth Circuit's decision in *Wilkey*; and (3) set deadlines for both parties to submit revised briefing related to Defendant's Motion for Summary Judgment. ECF No. 43. Both parties submitted revised briefing, and the matter is ripe for determination.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy

4

exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## III. ANALYSIS

### A. *The ADEA*

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA does not authorize mixed-motives age discrimination claims. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). Instead, a plaintiff bringing a disparate-treatment claim under the ADEA must prove that age was the "but-for" cause of the challenged adverse employment action. *Id.* at 176; *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citation omitted). "But-for" cause means the cause without which the challenged adverse employment action could not have occurred. *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013) (citation omitted).

A plaintiff may prove employment discrimination with either direct or circumstantial evidence. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Portis v. First Nat'l Bank*, 34 F.3d 325, 328 (5th Cir. 1994)). Where, as here, the plaintiff relies solely on circumstantial evidence, the court analyzes the plaintiff's claims under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of age discrimination by showing that: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii)

5

replaced by someone younger, or iii) otherwise discharged because of his age." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (citations omitted).

Once the plaintiff establishes a prima facie case, the defendant must set forth a legitimate, nondiscriminatory reason for discharging the plaintiff. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). This is a burden of production, not persuasion, on the defendant's part, and the determination of whether the defendant has met its burden "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

If the defendant carries its burden, "the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual." *Moss*, 610 F.3d at 922 (citing *Jackson*, 602 F.3d at 378-79). "In determining whether the plaintiff's rebuttal precludes summary judgment, '[t]he question is whether [the plaintiff] has shown that there is a genuine dispute of material fact as to whether this reason was pretextual.'" *Id.* (alterations in original) (quoting *Jackson*, 602 F.3d at 378-79). Pretext may be shown "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Jackson*, 602 F.3d at 378-79 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

### B. *The Burden-Shifting Analysis*

At the outset, the Court finds that the decision in *Wilkey*, which was affirmed by the Fifth Circuit, is highly persuasive in this case due to the similarities between *Wilkey* and the instant case. Defendant terminated Plaintiff and Wilkey on the same date for the same misconduct, and Korn was the decisionmaker in both cases. *See Wilkey*, 2018 WL 588245, at *3 & n.2.

For purposes of summary judgment, Defendant does not dispute that Plaintiff has established a prima facie case of age discrimination. *See* Rev. Br. 14. However, Defendant asserts that it had a legitimate, nondiscriminatory reason for terminating Plaintiff: "dishonesty in

6

falsifying UPS documents, i.e., [Surveys] that were supposed to be completed by his employees." *Id.* Defendant contends that Plaintiff's actions violated company policies, including the Integrity Policy, contained in Defendant's Policy Book, which states:

> We expect honesty from our people in all their duties, including the handling of money, property, information assets, and the preparation and approval of all reports and records.
>
> We also expect our people to be honest in their assessment of themselves, such as the time and commitment they give to their job performance, their dealings with others, or their evaluation of their own contributions or the contributions of others.

Def.'s Rev. App. 37. Similarly, the UPS Code of Business Conduct contains a section entitled "Our Commitment to Integrity" that dictates, "Compliance with our legal and ethical obligations is the responsibility of every UPS employee." *Id.* at 58. The Code of Business Conduct also states that employees "have an obligation to keep accurate and truthful records." *Id.* at 61.

Plaintiff contends, without explanation, that Defendant's "stated reason for discharge is neither neutral nor nondiscriminatory." Rev. Resp. ("Resp.") 23. Plaintiff does not explain what renders the reason non-neutral or discriminatory. And, as discussed at length in *Wilkey*, Plaintiff's reliance on *Patrick v. Ridge*, 394 F.3d 311 (5th Cir. 2004), is misplaced because the *Patrick* employer's reason was "content-less and nonspecific." 2018 WL 588245, at *6 n.3 (quoting *Patrick*, 394 F.3d at 317). Here, by contrast, Defendant "has provided a specific and concrete explanation for why it terminated [Defendant]." *Id.* Therefore, the Court disagrees with Plaintiff and finds that Defendant has offered a legitimate and nondiscriminatory explanation for Plaintiff's termination. *See, e.g., Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 313 (5th Cir. 2004) ("[V]iolating a non-discriminatory company policy is adequate grounds for termination[.]"); *Watts v. L-3 Commc'ns Corp.*, Civ. A. No. 3:12-CV-4248-G, 2013 WL 3789868, at *6 (N.D. Tex. July 22, 2013) ("A violation of company policy is unquestionably a legitimate, nondiscriminatory reason for termination." (citations omitted)).

7

Because Defendant has stated a legitimate, nondiscriminatory reason for Plaintiff's discharge, the burden shifts back to Plaintiff to show that Defendant's reason is merely pretextual. Plaintiff makes five arguments in support of his contention that Defendant's reason is pretextual: (1) Defendant selectively enforced its honesty/integrity policies; (2) declarations and affidavits from Plaintiff and other employees show that Defendant's stated reason is pretext; (3) Defendant's post-termination statements give rise to an inference of age discrimination; (4) the investigation into Plaintiff's conduct was biased or inadequate; and (5) the incident was too trivial to justify Plaintiff's termination.

Plaintiff's first and second arguments are intertwined, as Plaintiff proffers the declarations in an effort to demonstrate that "Surveys had always been either taken by others than the actual employee and/or were actually taken by Banks and/or the answers were dictated by supervisors, or completed by others." Resp. 25-26. These arguments both depend on the notion that Defendant knew that employees regularly falsified records but only enforced its policies against older workers. "In disparate treatment cases," such as this one, "the plaintiff-employee must show 'nearly identical' circumstances for employees to be considered similarly situated." *Wilkey*, 2018 WL 588245, at *7 (quoting *Berquist*, 500 F.3d at 353). "The 'alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decisions,' taking into consideration such factors as the employees' job titles, work location with the company, supervisors, and alleged misconduct." *Davis v. Farmers Ins. Exch.*, No. 4:08-CV-625-A, 2009 WL 1065159, at *5 (N.D. Tex. Apr. 17, 2009) (alteration in original) (quoting *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004)). Other relevant factors include whether the employees shared the same supervisor, whether the employees

had their employment status determined by the same person, and whether the violations occurred in the same time frame. *See Lee v. Kan. City S. Ry.*, 574 F.3d 253, 260 (5th Cir. 2009).

The Court finds that Plaintiff has not showed that any younger UPS employee was similarly situated yet treated differently under nearly identical circumstances. First, applying the foregoing factors, the Court finds that Plaintiff has failed to show that the UPS employees he proffers as comparators were similarly situated. Specifically, the alleged conduct of the comparators was remote in time, involved different managers or decisionmakers, or involved different conduct. Plaintiff did not identify a single employee of whom he has personal knowledge who directed a subordinate to falsify the Surveys, whose conduct was reported to upper management, and who was not terminated. In fact, the only employee that is actually similarly situated to Plaintiff, Wilkey, was terminated for engaging in the same conduct. *See* Pl.'s App. 18.

Second, Plaintiff omits the ages of the other employees that he contends were treated more favorably. The declarations Plaintiff submitted in support of his claims do not contain the ages of the employees that allegedly were treated more favorably than Plaintiff. *See* Pl.'s App. 6-21. In his own Declaration, Plaintiff claims that "[t]he rules are used against older long term employees," *id.* at 4, but Plaintiff does not provide a single example of a younger employee being treated more favorably. The Complaint is also devoid of such allegations. Therefore, Plaintiff has failed to show that he was treated less favorably than similarly situated employees outside his protected class. *See Boyd v. Dall. Indep. Sch. Dist.*, Civ. A. No. 3:08-CV-426-M, 2010 WL 1687665, at *6 & n.57 (N.D. Tex. Apr. 27, 2010) (finding that plaintiff failed to show less favorable treatment because she did not produce evidence of ages of allegedly similarly situated comparators) (citing, among other things, *Powers v. Woodlands Religious Cmty. Inc.*, 323 F. App'x 300, 304 (5th Cir. 2009)).

In support of his third argument, Plaintiff alleges that, after Wilkey was terminated, Wilkey was depicted as a dinosaur outside of Defendant's Human Resources offices. *See* Pl.'s App. 20-21. Plaintiff attaches a photograph, taken by Wilkey, that shows a dinosaur cutout holding a water bottle that appears to say "Donise." *Id.* at 21. This evidence is insufficient to establish pretext. First, the purported "statement" was made about Wilkey, not Plaintiff. Further, the photograph of the dinosaur was taken 14 months after Plaintiff and Wilkey were terminated. *Id.* Finally, the dinosaur is wearing a UPS shirt and is surrounded by a poster that says, "Dress the Part" and a poster that says, "Physically Ready . . . the JOB."[3] *Id.* This context tends to negate any inference of age discrimination, as it does not mention age and seems to indicate that the display was related to UPS's dress policy or a similar matter. Plaintiff does not provide any information concerning the photograph to clarify its meaning or to strengthen the inference. Therefore, the Court agrees with the finding in *Wilkey* that the evidence does not support the inference that the dinosaur cutout is probative of intentional age discrimination. *See Wilkey*, 2018 WL 588245, at *9.

As to Plaintiff's fourth argument, the Court finds no evidence that the investigation was biased or inadequate. Plaintiff exclaims that Joiner never spoke to Stucker, Plaintiff's immediate supervisor, and claims that "[a]n investigation without speaking to the supervisor is no investigation at all." Resp. 27. Plaintiff provides no authority in support of this assertion, and he fails to address Defendant's contention that Stucker was not interviewed because he was on vacation the week of the incident. Rev. Br. 7. Plaintiff also states that "Wilkey and [Plaintiff] were never asked where they ever got the idea to ask Banks to assist. Banks was never asked why she did it." Resp. 27. It is unclear to the Court how this alleged deficiency rendered the investigation either biased or inadequate, and Plaintiff provides no supporting authority or

---

[3] The middle portion of this poster is cut-off in the photograph included in Plaintiff's Appendix.

10

argument. Plaintiff concedes that he falsified the Surveys, which violated company policy. *See* Def.'s Rev. App. 10 ("Both [Plaintiff] and . . . Wilkey admitted during the investigation to asking . . . Banks to complete Surveys for their employees and both admitted they knew they were not following the correct procedures for completing the Surveys."). Without more, neither the source of the idea nor Banks's motivation changes this fact.

As to Plaintiff's fifth argument, that his falsification of the Surveys was too trivial to justify his termination, the Court disagrees. The Court notes that "[t]he ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions . . . . The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated." *Moss*, 610 F.3d at 926 (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)). In the absence of any evidence creating a fact issue as to whether Defendant's decision was unlawfully motivated, the Court finds that Plaintiff's admitted violation of company policy was not so trivial as to indicate pretext.

Viewing all evidence in the light most favorable to Plaintiff, the Court concludes that he has failed to raise a genuine dispute of material fact that Defendant's reason for firing him was a pretext for age discrimination and that, but for Plaintiff's age, he would not have been terminated. Accordingly, Defendant is entitled to summary judgment.

## IV.     CONCLUSION

For the reasons discussed above, the Court grants Defendant's Motion for Summary Judgment and dismisses Plaintiff's claims against Defendant. Judgment will issue by separate document. *See* FED. R. CIV. P. 58(a).

**SO ORDERED.**

SIGNED July 17, 2019.

**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**